# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| LOUIS KITCHENS, | Case No.: 2:04-CV-1119-RLH-LRL |
| Plaintiffs, | **O R D E R** |
| vs. | (Motion for Summary Judgment–#67) |
| LAWRENCE ROLL-UP DOORS, INC.; DOORS AND BUILDINGS COMPONENTS, INC.; and ROES I through X, inclusive, | |
| Defendants. | |
| NCI BUILDING SYSTEMS, INC. d/b/a DOORS AND BUILDING COMPONENTS, | |
| Cross-Claimant/ Cross-Defendant | |
| vs. | |
| LAWRENCE ROLL-UP DOORS, INC., | |
| Cross-Defendant/ Cross-Claimant | |
| FEDERAL INSURANCE COMPANY, | |
| Intervenor | |

1

Before the Court is Defendant NCI Building Systems, Inc.'s (NCI) **Motion for Summary Judgment** (#67), filed February 7, 2006. The Court has also considered Plaintiff Louis Kitchen's Opposition (#69), filed February , 2006, and Defendant NCI's Reply (#70), filed March 2, 2006.

## BACKGROUND

Plaintiff Kitchens filed this product liability suit, under strict liability and negligence theories, against Defendants NCI and Lawrence Roll-Up Doors (Lawrence) for injuries he suffered when a garage door designed and manufactured by Defendant NCI allegedly failed, fell, and struck Plaintiff. Specifically, Plaintiff alleges that on August 7, 2002, when he raised a garage door at the Storage West facility where he worked, the door did not stay in place but rather rolled down, striking his lower neck. Defendant Lawrence had performed maintenance on the door less than one month prior to the accident.

A few hours after the August 7, 2002 incident, a Lawrence employee, Michael Gallegos, examined the door. According to Mr. Gallegos, the bolt holding the spring to the shaft had come loose, resulting in the spring being detached from the shaft, and the shaft coming apart from the bracket that holds the door to the wall. Mr. Gallegos claims he did not notice any problems with either of the cotter pins in the door. However, a few days later, James Bertram, a contracted employee of Storage West, examined the door. According to Mr. Bertram, the cotter pin on the left side of the door had sheered off and fallen out.

Plaintiff contends that the door was defective because it was either not designed or manufactured with washers to protect the cotter pins, resulting in one of the cotter pins being sheered off, causing the door to fall. As proof that the door was defective, Plaintiff relies on the expert opinion of Mr. Berman. Plaintiff has also brings a claim for punitive damages against both Defendants, alleging that Defendants knew the garage door constituted a threat and danger to human life, but nonetheless, willfully, wantonly and maliciously concealed this information and failed to correct the defect.

Plaintiff filed his complaint in state court on May 7, 2004.  On August 11, 2004, Defendants removed the action to federal court.  On January 20, 2005, Federal Insurance Company's (FIC) motion to intervene was granted.  FIC has a statutory right of subrogation against any proceeds obtained in this suit by Plaintiff up to the amount paid by it on Plaintiff's workers' compensations claim.  The Court granted Defendant NCI's Motion for Leave to file Summary Judgment on February 10, 2006.  The Court now considers Defendant NCI's Motion for Summary Judgment.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."Fed.R.Civ.P. 56(c). The substantive law defines which facts are material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986*).*  All justifiable inferences must be viewed in the light most favorable to the non-moving party. *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir.2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. *Id*.; *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir.2001).

### II. Strict Product Liability

Nevada law imposes strict liability even where the product is faultlessly made, if it was unreasonably dangerous to place the product in the hands of consumers without adequate warnings concerning the product's safe and proper use. *Oak Grove Investors v. Bell & Gossett Co.*,

668 P.2d 1075, 1080 (Nev.1983) (overruled on other grounds)."To bring successfully a strict products liability claim, a plaintiff must show that: 1) the product had a defect which rendered it unreasonably dangerous; 2) the defect existed at the time the product left the manufacturer; and 3) the defect caused the plaintiff's injury." *Fyssakis v. Knight Equip. Corp.*, 826 P.2d 570, 571 (Nev.1992) (citing *Ginnis v. Mapes Hotel Corp.*, 470 P.2d 135 (Nev.1970))."Strict liability may extend not only to the dealer and retail seller of the product, but to the manufacturer of the product and the manufacturers of its component parts." *Oak Grove Investors*, 668 P.2d at 1080.

### A. Design or Manufacturing Defect

Defendant NCI contends there is no evidence that the model of door involved in the accident was defectively designed or manufactured or that it was unreasonably dangerous. First, Defendant NCI claims that the supplemental report provided by Plaintiff's expert witness, Mr. Berman, is not admissible because it was filed more than two-months after the deadline for expert reports. The Court notes, however, that the only material addition to the report with which Defendant NCI appears to take issue is Mr. Berman's statement that he was "provided with manufacturing and design documentation." It is within the Court's discretion to consider Mr. Berman's supplemental report, notwithstanding its untimely filing, and the Court sees no reason why it should not do so.

Next, Defendant NCI asserts that Mr. Berman's expert opinion that the garage door at issue was defective because it was either designed and/or manufactured without a washer device is purely speculative and conclusory. Specifically, Defendant NCI argues that although Mr. Berman was "provided with manufacturing and design documentation" and opines that the door was defective, he cannot differentiate whether it is a manufacturing defect or design defect. In addition, Defendant NCI asserts that Mr. Berman does not identify the documentation to which he is referring, does not state that he reviewed it, nor does he provide any additional basis to support his opinion. Nonetheless, Defendant NCI claims that even if the door was designed or

1  manufactured without a washer device, there is no evidence that the door was unreasonably
2  dangerous.
3          The Court disagrees.  Mr. Berman concluded that the door was defective because "a
4  washer was not used in the cotter pin assembly resulting in the failure of the cotter pin and the fall
5  of the door."  Although Mr. Berman does not give a detailed description of the basis for his
6  opinions, a qualified expert[1] could reasonably make this straightforward determination based on an
7  inspection of the "roll-up door in the storage unit in which Mr. Kitchens was injured, . . . an
8  exemplar door installation," and the "manufacturing and design documentation."  *See* Fed. R.
9  Evid. 703 (stating that "[t]he facts or data in the particular case upon which an expert bases an
10 opinion or inference may be those perceived by or made known to the expert at or before the
11 hearing").  Mr. Berman's inability at this time to categorically determine whether the defect is due
12 to faulty design or documentation is not dispositive, as the final determination will be made by the
13 trier of fact.  Additionally, Mr. Berman is not making a legal conclusion; he is making a factual
14 assertion regarding the absence of a washer and the resulting integrity of the door. Thus, the Court
15 finds that Mr. Berman's assertions are not inadequately supported or wholly conclusory.
16         Moreover, "a product is considered unreasonably dangerous when it is 'dangerous
17 to an extent beyond that which would be contemplated by the ordinary consumer who purchases it,
18 with the ordinary knowledge common to the community as to its characteristics.'" *Rivera v. Philip*
19 *Morris, Inc.*, 395 F.3d 1142, 1150 (9th Cir. 2005), citing Rest. (2d) Torts § 402A (1965).  An
20 ordinary customer would not contemplate that a garage door would fall down while he or she is
21 opening it, and therefore, it follows that the alleged defect in the garage door could be considered
22 unreasonably dangerous.  Accordingly, the Court finds that Plaintiff has provided sufficient
23 evidence that the door contained a manufacturing or design defect for the purpose of Plaintiff's
24 strict liability claim.

---

[1] Defendant NCI appears to concede that Mr. Berman is a qualified expert.

**B. Defect Existed at the Time Product Left Manufacturer**

Defendant NCI contends that there is no evidence that the door was defective at the time it left NCI because the testimony of Mr. Bertram, the contracted employee of Storage West, that washers were not included in the installation kit for the door at issue is speculative. According to Mr. Bertram's deposition, he testified that he did not believe that those particular doors came with washers because none of those types of doors installed at Storage West had washers. Contrary to Defendant NCI's assertions that the testimony is speculative, the Court finds the Mr. Bertram's inference is reasonably supported by circumstantial evidence. Further, Mr. Berman's expert report states that "the burden as to supplying a few cents worth of washers with the door installation kit is the responsibility of the manufacturer." The Court thus finds there is sufficient evidence from which a jury could conclude that washers were not included in the installation at the time the door left Defendant NCI's premises. Accordingly, summary judgment is not proper as to this issue either.

**C. Defect Caused the Injury**

Defendant NCI argues there is no evidence that the alleged defect caused the accident. Specifically, Defendant NCI argues there is no evidence that a missing washer caused (1) the cotter pin to break or (2) the door to fall. Defendant NCI first argues that Mr. Berman's expert opinion that a missing washer "in the cotter pin assembly result[ed] in the failure of the cotter pin and the fall of the door" is baseless and speculative. However, as explained above, although Mr. Berman does not give a detailed description of the basis for his opinions, a qualified expert could arrive at this determination based on an inspection of the door and exemplar door installation, as Mr. Berman did in this case. Nonetheless, even assuming that Mr. Berman's statement is speculative, the Court still finds summary judgment is improper.

Both Mr. Gallegos and Mr. Bertman testified that a missing washer could cause the cotter pin to shear off and break. Viewing the facts in a light most favorable to Plaintiff, this is sufficient evidence to support Plaintiff's claim of the same. With respect to Defendant NCI's

1  assertion that all of the witnesses testified that the door would not fall, the Court also finds this
2  claim to be contrary to the evidence before the Court.  During Mr. Gallegos deposition testimony,
3  he testified that "If the washer is not there, the shaft will not sit directly in one place.  That washer
4  is there as a spacer to keep the shaft from . . . cutting not only the shaft but sheering the . . .cotter
5  pin."  Mr. Gallegos was then asked, "And if that fails, what happens to the door?"  To which he
6  responded that "the door will fall."

7          Defendant NCI attempts to argue that Mr. Gallegos (1) testified as to what would
8  happen if both the door's cotter pin and shaft sheered and (2) did not testify that the failure of
9  either would cause the door to fall straight down as it had onto Plaintiff.  However, viewing the
10 facts in a light most favorable to Plaintiff, the Court must conclude that Mr. Gallegos was
11 testifying that a sheered cotter pin by itself would make the door fall in the manner Plaintiff
12 alleges.  Nonetheless, Defendant NCI argues that even assuming arguendo that Mr. Gallegos
13 testified that a cotter pin would cause the door to fall straight down, such testimony is insufficient
14 to defeat a motion for summary judgment because "evidence is insufficient [to raise a material
15 issue of fact precluding summary judgment] if the strongest inference to be drawn in plaintiff's
16 favor is that defendant's negligence could *possibly* have been the cause of the accident."  *See*
17 *Bieghler v. Kleppe*, 633 F.2d 531, 534 (9th Cir. 1980) (emphasis added).  The Court notes,
18 however, that Mr. Gallegos does not state that the door could *possibly* fall, but rather states that the
19 door *will* fall.  Accordingly, the Court finds that Plaintiff has presented sufficient evidence from
20 which an inference can be drawn that it was more likely than not that an absent washer caused the
21 cotter pin to sheer off and the door to fall, causing his injuries; therefore, summary judgment is
22 improper on this issue.

23 **III. Negligence Claim**
24         "To prevail on a negligence theory, the plaintiff generally must show that: (1) the
25 defendant had a duty to exercise due care towards the plaintiff; (2) the defendant breached the
26 duty; (3) the breach was an actual cause of the plaintiff's injury; (4) the breach was the proximate

1   cause of the injury; and (5) the plaintiff suffered damage." *Perez v. Las Vegas Medical Center*,
2   805 P.2d 589,590 - 591 (Nev. 1991).
3         Plaintiff asserts that Defendants "negligently designed, manufactured, distributed,
4   sold, installed, and/or maintained the garage door, and further failed to warn of the defective
5   condition of the garage door." Plaintiff alleges that Defendant NCI owed a duty to Plaintiff to
6   make the product safe for everyday use or, at the very least, warn of dangers inherent in its use.
7   According to Plaintiff, Defendant NCI allegedly breached its duty to Plaintiff because it
8   manufactured or designed the door without washers, which ultimately caused Plaintiff's injuries
9   when a cotter pin sheered off causing the door to fall. Plaintiff further alleges that Defendant
10  knew or should have known of the inherent danger as evidenced by Mr. Bertram's testimony that
11  out of the 400 or so roll-up doors which he has repaired, there were seven instances where the
12  cotter pin was sheered off due to an absent washer. Defendant NCI contends, however, that it is
13  entitled to summary judgment on Plaintiff's negligence claim because there is no evidence that the
14  door contained such a defect or that such a defect was the cause of Plaintiff's injuries. Further,
15  Defendant NCI contends that there is no evidence the alleged existence of such defect was the
16  result of its failure to use reasonable care.
17        As explained above in the context of Plaintiff's strict liability claim, the Court finds
18  that Plaintiff has presented sufficient evidence that the door contained a defect and that the defect
19  was the cause of Plaintiff's injuries. Thus, the Court need only determine whether Plaintiff has
20  presented evidence that the alleged defect was the result of Defendant NCI's failure to use
21  reasonable care. Although Plaintiff does not present any direct evidence that Defendant NCI knew
22  that the absence of a washer would cause the cotter pin to sheer off, the Court finds that a genuine
23  issue of material fact exists as to whether Defendant NCI *should have known* that the cotter pin
24  would sheer off without a washer. Both Mr. Gallegos and Mr. Bertram testified in their
25  depositions that the purpose of a washer is to prevent the cotter pin from being sheered off.
26  Further, Mr. Berman stated the same in his expert report. Based on the statements of these three

witnesses, a jury could infer that Defendant NCI should have known the effects an absent washer would have on a cotter pin. Accordingly, because a genuine issue of material fact exists as to whether Defendant NCI used reasonable care in failing to provide washers, summary judgment will be denied as to this claim.

**IV. Punitive Damage Claim**

Punitive damages may be awarded where "the defendant has been guilty of oppression, fraud or malice, express or implied." NRS 42.005. Plaintiff alleges that he is entitled to an award of punitive damages because Defendant NCI knew or should have known that the failure of the cotter pin would lead to the collapse of the door. Plaintiff relies on Mr. Gallegos' testimony, wherein he states that a sheered off cotter pin will cause the door to fall. Defendant NCI argues that this testimony is irrelevant to Plaintiff's punitive damage claim because it is not probative of whether Defendant NCI acted with alleged fraud, malice or oppression in the manufacturing or design of the door. The Court disagrees and instead finds that Mr. Gallegos' testimony, as well as Mr. Berman's expert testimony, creates a genuine issue of material fact as to whether Defendant NCI should have known that a sheered off cotter pin would cause the door to fall.

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (#67) is DENIED.

Dated: May 8, 2006.

_____
ROGER L. HUNT
United States District Judge